IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **GLENDA RIGGINS** § | | |
| § | | |
| V. § | CIVIL ACTION NO. _____ | |
| § | | |
| **HOUSTON HOUSING AUTHORITY** § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PRELIMINARY STATEMENT

1. This is an action against the Houston Housing Authority ("HHA"), a unit of government for declaratory and injunctive relief.

2. Defendant HHA is a local administrator of the Section 8 Housing Choice Voucher Program ("Voucher Program"), which is a federally subsidized housing program for the poor. Glenda Riggins ("Riggins") was a participant in the Voucher Program administered by HHA, and she received valuable housing assistance under that program.

3. Plaintiff Riggins brings this action because Defendant HHA wrongfully terminated her housing assistance under the Voucher Program without

1

evidence of good cause for doing so. Through this action, Riggins seeks to be reinstated into the Voucher Program. She also seeks certain declarations as to the sufficiency of evidence needed by HHA to terminate voucher participants for alleged criminal conduct.

4. Plaintiff Riggins brings this action: (1) under 42 U.S.C. § 1983; and (2) under 28 U.S.C. § 2201 for declaratory relief.

## PARTIES

5. Plaintiff Glenda Riggins is an individual and a citizen of the United States. She has resided within Houston, Harris County, Texas, at all times relevant to this lawsuit.

6. Defendant Houston Housing Authority is a locally established and administered public body situated in Houston, Texas. HHA is a Public Housing Authority ("PHA") created pursuant to the Texas Local Government Code. As a PHA, HHA is a "unit of government" and its functions "are essential governmental functions and not proprietary functions." TEX. LOCAL GOV'T CODE § 392.006.

## JURISDICTION

7. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 2201.

## STATUTORY & REGULATORY BACKGROUND

8. The United States Housing Act of 1937 (the "Housing Act") was passed to provide affordable housing for low-income people. The Housing Act does this by subsidizing the rent of low-income people who participate in any of the many subsidized housing programs which were created pursuant to the Housing Act.

9. The Section 8 Housing Choice Voucher Program ("the Voucher Program") was created when Congress amended the Housing Act in 1983. 42 U.S.C. § 1437f(o). The Voucher Program is administered on a national level by the United States Department of Housing and Urban Development ("HUD").

10. Under the Voucher Program, HUD will fund a PHA to administer the Voucher Program on a local basis. To receive this funding, the PHA must sign an annual contributions contract with HUD which authorizes the PHA to enter into Housing Assistance Payments ("HAP") contracts with participating landlords. The HAP contracts provide the mechanism by which a PHA can distribute federal funding under the Voucher Program to private landlords as rental assistance for a participants in the Voucher Program. Among other things, each HAP agreement sets out the maximum amount of rent which the landlord may collect each month from the voucher holder, and the amount of rent which the landlord shall be paid directly by the PHA. 24 C.F.R. § 982.451(b).

11. Once admitted into the Voucher Program, a family has an entitlement

to continued participation in that program so long as it meets the financial eligibility standards and otherwise complies with its family obligations. The substance of these family obligations is set forth in HUD regulations. 24 C.F.R. § 982.551, *et seq*.

12. The regulatory list of family obligations expressly prohibits certain types of criminal conduct. Among other things, the family obligations are breached whenever a family member engages in "…violent criminal activity…that threatens the health, safety or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises." 24 C.F.R. § 982.551(l). A PHA has the authority to terminate housing assistance if "…any household member has violated the family's obligation under § 982.551 not to engage in violent criminal activity." 24 C.F.R. § 982.553(b)(2).

13. A PHA's determination that a voucher participant has engaged in violent criminal activity must be based upon actual evidence. HUD regulations specifically provide:

> "Evidence of criminal activity. The PHA may terminate assistance for criminal activity by a household member as authorized in this section if the PHA determines, **based on a preponderance of the evidence**, that the household member has engaged in the activity, regardless of whether the household member has been arrested or convicted for such activity. [Emphasis added.]" 24 C.F.R. § 982.553(c)

14. A PHA which administers the Voucher Program on a local basis is required to adopt a written administrative plan in "…accordance with HUD

4

regulations and requirements." 24 C.F.R. § 982.54(b).  Once a PHA has adopted its written administrative plan, then the PHA has a statutory obligation to comply "…with the rules, standards, and policies established in the public housing agency plan…" 42 U.S.C. § 1437c-1(l)(1).

## FACTS

15.     Defendant HHA is a Public Housing Authority ("PHA") which administers various federally subsidized housing programs in the Houston greater metropolitan area pursuant to the Housing Act.

16.     At all times relevant to this lawsuit, Defendant HHA maintained a written Administrative Plan For Section 8 Programs (the "Administrative Plans"). The Administrative Plan which HHA adopted in April of 2012, was subsequently replaced by the Administrative Plan for 2014 (which was actually adopted in August of 2013).

17.     Defendant HHA's Administrative Plans required it to conduct annual recertifications of its voucher participants to ensure that those participants, along with the members of the participants' households, remained eligible to continue receiving housing assistance under the Voucher Program.

18.     At Part VI(L)(6), HHA's Administrative Plans provided that "Criminal background checks may be conducted on all adult household members at … annual recertifications...." At Part VI(L)(7), those plans also provided that

"Any information discovered from these background checks that reveals a program violation may lead to termination." .

19.   At Part VI(H), the Administrative Plans provided that HHA "…may terminate participant assistance if…(8) any household member engages in drug-related or violent criminal activity."

20.   At Part VI(H), the Administrative Plans provided that "[i]n any case in which [HHA] decides to terminate assistance to the family, [HHA] will give both the family and the owner a 30-day written termination notice which states…specific reasons for the termination."

21.   On May 17, 2011, the HHA's then Fraud Investigator, Cordell Lindsey, was deposed in *Anita Watson v. Houston Housing Authority*; No. 10-cv-1072; in the Southern District of Texas.  In that deposition, Mr. Lindsey testified that the HHA conducts an average of about 6,000 criminal background checks each quarter, or approximately 2,000 criminal background checks each month.

22.   On information had and received, Plaintiff Riggins alleges that HHA conducted several thousand criminal background checks in 2013.

23.   In his deposition on May 17, 2011, Mr. Cordell Lindsey further testified that when the Harris County Justice Information Management System ("JIMS") shows a warrant, an arrest or a prosecution for certain types of crimes, it was his department's standard practice to give a failing mark to that participant's

6

criminal background check without first obtaining any other evidence to corroborate that the participant actually committed the alleged crime.  Mr. Lindsey also testified that voucher participants who fail their criminal background checks were then sent program termination notices by HHA.

24. On information had and received, Plaintiff Riggins alleges that in 2012 and 2013, HHA followed a pattern and practice of relying solely upon a voucher participant's ongoing criminal prosecution as evidence of criminal activity which was sufficient, in and of itself, to terminate that participant's housing assistance for having committed prohibited criminal activity.

25. Plaintiff Riggins was a participant in the Voucher Program administered locally by HHA.  After finding that Riggins met all of the eligibility requirements, HHA issued Riggins a Housing Choice Voucher.  Riggins used that voucher to lease an apartment from the Costa Vizcaya Apartments, located at at 12020 North Gessner Drive, Houston, Texas 77064.  Riggins used that apartment as a home for her and her family, including her son, Alvin Riggins ("Alvin").

26. Defendant HHA entered a HAP Contract with Costa Vizcaya which subsidized Riggins' rent in that apartment

27. In the Fall of 2012, Riggins was obliged to complete the annual recertification process.  As part of that process, HHA conducted a criminal background check for Ms. Riggins and for the members of her household.

28. When HHA conducted the criminal background check for Ms. Riggins and her household in the Fall of 2012, that check revealed that first-degree felony murder charges were pending against Ms. Riggins' 18-year old son, Alvin Riggins ("Alvin"). At the time, there was no evidence that Alvin had made any admissions of guilt for that crime, nor that he had been convicted of that crime.

29. Defendant HHA served Plaintiff Riggins with a termination notice dated November 13, 2012. That notice stated that Riggins' housing assistance would be terminated effective December 31, 2012. The notice also indicated that "The specific violation(s) for which your assistance is being terminated is/are: ALVIN RIGGINS FAILED CRIMINAL BACKGROUND CHECK, PLEASE SEE ATTACHMENT." A copy of the termination notice is attached hereto as "Exhibit A."

30. The only attachment to the termination notice of November 13, 2012, was a print-out of a JIMS report which indicated that Alvin had been indicted, and was being prosecuted, for felony murder. That JIMS report also indicated that the next hearing in that criminal prosecution was set for November 30, 2012.

31. On information and belief, Riggins alleges that HHA relied solely upon the JIMS report to determine that Alvin engaged in violent criminal activity, and that HHA had no evidence other than the JIMS report to corroborate the allegation that Alvin engaged in violent criminal activity.

8

32. On information and belief, Plaintiff Riggins alleges that Defendant HHA made the decision to terminate her housing assistance without any evidence that the alleged violent criminal activity occurred on or near the leased property. More specifically, Riggins alleges that HHA decided to terminate her housing assistance without evidence which could support a finding under 24 C.F.R. § 982.551(l) that the alleged crime affected "…the health, safety or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises."

33. When the criminal case against Alvin Riggins was called for trial on November 30, 2012, the State of Texas had no witnesses to substantiate the charge against him. The State moved for dismissal of the criminal action on that ground. The Court dismissed the case that same day. A copy of the combined motion and dismissal order is attached hereto as "Exhibit B."

34. On November 30, 2012, the same day that the criminal charges against Alvin were dismissed, Riggins informed HHA of the dismissal and requested an informal hearing to contest the termination of her housing assistance.

35. HHA declined to give Riggins an informal hearing because her request was untimely under HHA's Administrative Plan.

36. Defendant HHA paid its portion of Riggins' rent to her landlord through December 31, 2012. Despite its knowledge that the criminal charges

against Alvin had been dismissed, HHA nevertheless stopped making rental payments for any period after December 31, 2012.

37. Defendant HHA terminated Plaintiff Riggins housing assistance on December 31, 2012, which was the date indicated on its termination notice to her.

38. Defendant's Board of Commissioners ("the Board) is the final decision maker for HHA.

39. On July 19, 2013, Plaintiff Riggins sent a letter to the Board which described the circumstances under which HHA stopped paying its portion of her rent. As attachments to that letter, Riggins provided the Board with a copy of HHA's termination notice which alleged criminal activity as grounds for terminating her housing assistance on December 31, 2012, and she also provided a copy of the order dated November 30, 2012 which dismissed all criminal charges for that alleged criminal activity. In her letter, Riggins asked the Board to reject HHA's termination of her housing assistance, and to reinstate that assistance.

40. The Board did not reinstate Riggins' housing assistance after it received her letter of July 19, 2013.

41. The Board ratified HHA's termination of Plaintiff Riggins' housing assistance after it received Riggins letter of July 19, 2013.

42. Plaintiff Riggins was unable to pay the entire amount of rent without her housing assistance, and her landlord filed a forcible detainer action for non-

payment of rent. *Costa Vizcaya v. Riggins*; No. 1029433; In Civil County Court at Law No. 1 of Harris County, Texas. That forcible detainer was non-suited in return for Riggins' agreement to move out without the necessity of a trial.

43.     As a result of Defendant HHA's failure to continue paying it's portion of Plaintiff Riggins' rent, Riggins: incurred a rental arrearage which she still owes; was forced to move and t incur moving costs; incurred further utility re-connection costs; and she lost the value of her security deposit.

## COUNT ONE – WRONGFUL TERMINATION

44.     Defendant HHA terminated Plaintiff Riggins' housing assistance on December 31, 2012, when it knew that it had no factual nor legal basis for doing so. The Defendant's Board, which is its final decision maker, subsequently ratified that termination in July of 2013, and did so with actual knowledge that Defendant HHA never had a sufficient factual nor legal basis for terminating Riggins' housing assistance.

45.     Plaintiff Riggins had a cognizable property interest in the continued receipt of her federally subsidized housing assistance.  Defendant HHA (which is a unit of government) arbitrarily and capriciously infringed upon that property when it terminated Riggins federally subsidized housing assistance without good cause, in violation of the guarantees of due process promised by the Fourteenth Amendment of the United States Constitution.  This wrongful termination also

violated provisions of the Housing Act and of applicable HUD regulations. For such conduct, Riggins is entitled to, and seeks, both injunctive and declaratory relief.

## REQUEST FOR DECLARATORY RELIEF

46. HUD regulations found at 24 C.F.R. §982.553(c) provide that when a PHA makes the determination that someone has engaged in criminal activity, that determination must be based upon the preponderance of the evidence. Riggins asks the Court to construe this provision in a manner which resolves the following issues:

   A. Where there has been no admission of guilt, where there has been no adjudication of guilt, and where the PHA has no other evidence to corroborate the allegation of criminal activity, whether the mere fact that a person has been unsuccessfully prosecuted for an alleged crime is, in and of itself, sufficient to support a determination under § 982.553(c) that the person actually engaged in any criminal activity.

   B. Where there has been no admission of guilt, where there has been no adjudication of guilt, and where the PHA has no other evidence to corroborate the allegation of criminal activity, whether the mere fact that a person is currently being prosecuted for an alleged crime is, in and of itself, sufficient to support a determination under § 982.553(c) that the person

being prosecuted actually engaged in the alleged criminal activity.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Glenda Riggins prays that, upon the trial of this cause, this Honorable Court render its judgment which:

A. Grants a permanent injunction compelling Defendant Houston Housing Authority to immediately reinstate Plaintiff Glenda Riggins' benefits under the Section 8 Housing Choice Voucher Program;

B. Grants the declaratory relief requested in this Complaint;

C. Awards the Plaintiff the recovery from the Defendant of her costs of court;

D. Assesses post-judgment interest at the maximum lawful rate on all damages awarded; and

E. Awards the Plaintiff such other and further relief to which she may be entitled.

Respectfully submitted,

 */S/ Mark J. Grandich*
Mark J. Grandich
State Bar No. 08294850
So. Dist. No. 12082.

Lone Star Legal Aid
1415 Fannin, Third Floor
Houston, Texas 77002
mgrandich@lonestarlegal.org
 (713) 652-0077, ext. 1251
Fax (713) 652-3814

PLAINTIFF'S COUNSEL